**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>**Plaintiff**<br><br>v.<br><br>JEFF SMILEY, III<br><br>**Defendant** | 3:19-CR-00752-RAM |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge.

Pending before the Court are the following motions: *Defendant's Motion for Revocation of Detention Order* and *Defendant's Appeal of Magistrate Judge's Detention order and Request for Immediate Release with Conditions*. (Docket Nos. 8 & 13). For the reasons explained below, Defendant Jeff Smiley III ("Mr. Smiley" or "Defendant") shall remain detained awaiting trial.

## I. BACKGROUND

On November 6, 2019 a *Criminal Complaint* was filed against Defendant Jeff Smiley III and charged him with a violation of 18 U.S.C. 113(a)(7); that is "assault within maritime jurisdiction; assault resulting in substantial bodily injury to a spouse or intimate partner." The *Criminal Complaint* also requested Defendant's temporary detention. Accordingly, on November 6,

2019, Mr. Smiley was brought before U.S. Magistrate Judge Silvia Carreño-Coll who scheduled a detention hearing for November 12, 2019.

The detention hearing was held as scheduled, and Defendant was represented by counsel. After hearing the proffers of the Defendant's Counsel and of the Assistant U.S. Attorney, the Magistrate Judge ordered Defendant's detention. (Docket No. 10) According to the Order of Detention, the Government moved for detention pursuant to 18 U.S.C. 3142(f)(1). Id. at 1. The Magistrate Judge found that detention was warranted because the Government proved "[b]y clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." Id. at 2. In addition to said finding, the Magistrate Judge determined that the following reasons in the case at bar called for detention: "[w]eight of evidence against the defendant is strong;" "[p]rior criminal history;" and "[h]istory of alcohol or substance abuse." Id.

On November 12, 2019, Defendant filed his *Motion to Revoke Detention Order*. (Docket No. 8). In response, on November 14, 2019, Chief Judge Gustavo A. Gelpí ordered the expedited preparation of the transcripts of the detention hearing and ordered

Defendant to file a memorandum explaining his challenges to the Order of Detention. (Docket No. 12).

Defendant complied with Judge Gelpi's Order on November 18, 2019 by filing *Defendant's Appeal of Magistrate Judge's Detention order and Request for Immediate Release with Conditions.* (Docket No. 13). In this latter submission, Mr. Smiley contends that he is "being detained in violation of the law because none of the § 3142(f)(1) factors are met." (Docket No. 13 at 2). According to Defendant, he is not charged with a "crime of violence" and thus no detention hearing should have been held under Section 3141(f)(1). Id. at 2-6.

On November 20, 2019 a Grand Jury returned an indictment charging defendant Jeff Smiley III with a violation of 18 U.S.C. 113(a)(7) which prohibits "assault resulting in substantial bodily injury to a spouse or intimate partner, a dating partner" within the special and maritime jurisdiction of the United States. (Docket No. 14). According to the indictment, on or about November 4, 2019, Mr. Smiley:

> [A]t a place within the special maritime and territorial jurisdiction of the United States, namely the high seas with the first port of entry in Puerto Rico, did assault his intimate and dating partner, resulting in substantial bodily injury. All in violation of Title 18 United States Code, Section 113(7). Id.

On November 27, 2019, this Court held a *de novo* detention hearing. The Court heard the evidentiary proffers and legal

arguments made by the parties' counsel. The parties agreed that the Court could consider the transcript of the November 12, 2019 detention hearing and the Pretrial Services Report, which contains Mr. Smiley's history of arrests, pending cases and convictions, with the addition of a statement identifying a charge of criminal mischief to which defendant pled guilty on June 6, 2017. The date of arrest, place of offense and disposition of that charge were already disclosed in the Pretrial Services Report.

## II. LEGAL STANDARD

**A. Standard of review for a detention or release order:**

A district court reviews a Magistrate Judge's order of detention or release under a *de novo* standard and "need not defer to the magistrate judge's findings or give specific reasons for rejecting them." *See* U.S. v. Cidraz-Santiago, 18 F. Supp. 3d 124, 126 (D.P.R. 2014). A district court may also "take additional evidence or conduct a new evidentiary hearing when the defendant has placed relevant facts at issue." Id.

**B. The Bail Reform Act:**

"The Bail Reform Act of 1984 (the "Act") allows a federal court to detain an arrestee pending trial if the Government demonstrates by clear and convincing evidence after an adversary hearing that no release conditions "will reasonably assure ... the safety of any other person and the community." U.S. v. Salerno, 481 U.S. 739, 742 (1987) (quoting 18 U.S.C. § 3141(f)). The

Supreme Court of the United States found that the purpose of this legislation was to "give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released." Id.

Pursuant to the Bail Reform Act, a judicial officer must determine whether a person charged with an offense shall be detained or released. 18 U.S.C. § 3141(a). Section 3142(e) of the Act provides that ultimately, if after conducting a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial." 18 U.S.C. § 3142(e).

Section 3142(f) of the Act establishes the instances in which an accused individual is eligible for detention and therefore, a detention hearing is proper. 18 U.S.C. § 3142(f). Specifically, Section 3142(f)(1)(a) of the Act requires that the judicial officer shall hold a detention hearing upon motion of the attorney for the Government in cases which involve "a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. § 3142(f)(1)(a). Likewise, Section 3142(f)(2) authorizes the court to hold a detention hearing upon government motion or *sua sponte* in cases that involve "a

serious risk that such person will flee" **or** "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2). The standard of proof for detention due to dangerousness is clear and convincing evidence. Id. In turn, the standard of proof for detention due to risk of flight is preponderance of the evidence. *See* United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991)

When determining whether there are conditions of release to assure the defendant's appearance and the safety of the community during a detention hearing, judicial officers must take into consideration the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

It is worth noting that Section 3142(g) explicitly states that a defendant's criminal history is a component of their "history and characteristics" that should be analyzed during the detention hearing. 18 U.S.C. § 3142(g). When considering the defendant's criminal history, "the court may consider evidence of the defendant's past or present wrongful conduct as indicative of

a defendant's dangerous tendencies, regardless of whether such conduct resulted in a state or federal prosecution." United States v. Tolbert, 2017 WL 6003075, at *5 (E.D. Tenn. 2017). This is due to the fact that the Section 3142(g) "analysis is concerned with a practical assessment of the defendant's dangerousness, rather than an adjudication of guilt for a particular offense." Id.

Under the Act, a decision to detain must be supported by written findings of fact and a statement of reasons and is immediately reviewable. 18 U.S.C. § 3142(i).

### III. DISCUSSION

**A. Section 113(a)(7) is a "crime of violence" for purposes of the Bail Reform Act:**

The crux of Defendant's argument is that the offense he is charged with is not a "crime of violence" and therefore, no Section 3141(f)(1) factor is met to warrant his detention. The definition of the term "crime of violence" for purposes of the Bail Reform Act is found in Section 3156(4) which states in the relevant part that the term "crime of violence" means:

> (A) an offense that **has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;**
>
> (B) any other offense that **is a felony** and **that, by its nature, involves a substantial risk that physical force against the person** or property of another **may be used in the course of committing the offense.**

18 U.S.C. § 3156(4) (emphasis added). Courts use a "categorical approach" when determining whether a given offense fits within

this definition of "crime of violence." United States v. Rogers, 371 F.3d 1225, 1229, n.5 (10th Cir. 2004). This means that "the possibility of force must result from the nature of the elements of the offense rather than from the particular way that the defendant allegedly committed the crime." Id. In other words, Courts must analyze the statute codifying the crime in lieu of the specific facts and circumstances of the offense.

In the case at bar, Defendant is charged with "[a]ssault resulting in substantial bodily injury" to a spouse, intimate partner, or dating partner within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 113(a)(7). "Because § 113 does not define 'assault,' courts give the term its established common law meaning. United States v. Verwiebe, 874 F.3d 258, 261 (6th Cir. 2017), cert. denied, 139 S. Ct. 63, 202 L. Ed. 2d 44 (2018) (citing United States v. Turley, 352 U.S. 407, 411 (1957)). Circuit courts have held that under 18 U.S.C. § 113 an assault "is any intentional and voluntary attempt or threat to do injury to the person of another, when coupled with the apparent present ability to do so sufficient to put the person against whom the attempt is made in fear of immediate bodily harm," United States v. LeCompte, 108 F.3d 948, 952 (8th Cir. 1997). Therefore, "an individual may violate § 113 by (1) willfully attempting to inflict injury on another person or (2) threatening to inflict injury on another person, causing a

reasonable apprehension of immediate bodily harm." Verwiebe, 874 F.3d at 261. (citing United States v. Hathaway, 318 F.3d 1001, 1008 (10th Cir. 2003)).

Defendant contends that Section 113(a)(7) assault is not a "crime of violence" solely because assault *under other statutes* can encompass *reckless* behavior and the definition and the definition of the crime of violence in 18 U.S.C. § 3156(4) requires *intentional* behavior. In both his written submission at Docket No. 13 and during the *de novo* hearing, Defendant invoked the First Circuit's Opinion in Bennett v. U.S., 868 F.3d 1 (1st Cir. 2017) and U.S. v. Fish, 758 F.3d 1 (1st Cir. 2014) to sustain this argument. However, these cases analyze whether *state law statues* for assault qualify as crimes of violence as defined by statues other than the Bail Reform Act. In Bennett, the First Circuit found that Maine's aggravated assault statute does not qualify as a violent felony under the Armed Career Criminal Act, 18 U.S.C. § 924(e), because said offense "may be committed with a mens rea of mere recklessness, as opposed to purpose or knowledge." Bennett, 868 F.3d at 1. Likewise, in Fish the First Circuit held that assault and battery with a dangerous weapon as defined by Massachusetts law does not qualify as a crime of violence under 18 U.S.C. § 16 because it "allows convictions based on mere recklessness […] as long as the recklessness causes non-trivial bodily harm." U.S. v. Fish, 758 F.3d at 9.

The First Circuit's reasoning and rationale in <u>Bennett</u> and <u>Fish</u> are inapplicable to the case at bar. **Neither of these cases analyze 18 U.S.C. § 113(a)(7),** i.e. the statute in controversy. The categorical approach requires an examination of the elements of the offense, **not** of analogous state law statutes. *See* <u>United States v. Rogers</u>, 371 F.3d at 1229, n.5.

As discussed above, assault under 18 U.S.C. § 113(a)(7) requires an "**intentional and voluntary** attempt or threat to do injury." <u>United States v. LeCompte</u>, 108 F.3d at 952 (emphasis added). Pursuant to this definition, **recklessness does not suffice**. Therefore, Mr. Smiley has been charged with a crime of violence and is eligible for detention pursuant to 18 U.S.C. § 3142(f).

**B. Even if Section 133(a)(7) is deemed "not to be a crime of violence", the Court could hold a hearing under 3142(f)(2) due to risk of flight:**

The Court notes the offense Mr. Smiley is charged with does not activate the presumption that no combination of conditions will reasonably assure Mr. Smiley's appearance codified at 18 U.S.C. § 3142(e)(3). However, the Government can still establish Defendant's risk of flight by preponderance of evidence. <u>United States v. Patriarca</u>, 948 F.2d 789, 793 (1st Cir.1991). The Government contends that Defendant's complete lack of personal or property ties in Puerto Rico makes him a flight risk. Another judge in this district found that a defendant was a flight risk because

"because he ha[d] ties, familial and otherwise, to the Continental U.S., having lived there for seven months." United States v. Alindato-Perez, 627 F. Supp. 2d 58, 66 (D.P.R. 2009).

Defendant contends that he is not a flight risk because he has always appeared at all previous criminal proceedings. In response, the Government argued that Defendant's previous appearances are irrelevant because he is currently facing his longest potential prison sentence to date, specifically five (5) years. *See* 18 U.S.C. § 113(a)(7). "[N]umerous courts have recognized that the seriousness of the charge and the weight of the evidence can create a strong incentive for a defendant's flight." United States v. Rodriguez-Adorno, 606 F. Supp. 2d 232, 236 (D.P.R. 2009). In Alindato-Perez, this district also determined that "the steeper the potential sentence, the more probable the flight risk is, especially considering the strong case of the government based on the video tapes of defendant [committing the alleged offense] in plain view." Alindato-Perez, 627 F. Supp. 2d at 66.

Mr. Smiley has been a lifelong resident of Texas and admittedly has no personal, community, or financial ties to Puerto Rico. Although five (5) years is not generally considered a long term of imprisonment, it is the most significant potential sentence Mr. Smiley has had to face. See, e.g. United States v. Ferrer-Sosa, 28 F. Supp. 3d 122, 130 (D.P.R. 2014) (finding that long

sentences, mandatory life or over (20) years, together with strong inculpating evidence constitutes a high flight risk of flight. Said potential sentence, coupled with the strong evidence presented by the Government (a video tape of the alleged assault discussed bellow) and Mr. Smiley's lack of ties to Puerto Rico allow this Court to conclude that he is a risk of flight.

## C. An analysis of the Section 3142(g) factors indicates that detention pending trial is proper

### 1. The nature and circumstances of the offense charged:

Defendant is charged with a violation of Section 113(a)(7) which prohibits "assault resulting in substantial bodily injury to a spouse or intimate partner, a dating partner." During the detention hearing held on November 27, 2019, the Government presented video camera footage obtained from the cruise ship where the alleged assault took place. The videos depict an attack which began when Defendant slapped the alleged victim in the face while in an elevator. Once the elevator doors opened, the victim began to run away. Defendant tackled her and pursued her through different decks or "floors" of the cruise ship. Because of the attack, the victim allegedly suffered a broken jaw and broken arm. If these injuries are proven, they should meet the definition of substantial bodily injury which is bodily injury which involves "(A) a temporary but substantial disfigurement; or (b) a temporary

but substantial loss or impairment of the function of any bodily member, organ or mental faculty." 18 U.S.C. § 113(b)(1).

**2. The weight of the evidence against the Defendant:**

The weight of the evidence against the Defendant is strong. The actions upon which the indictment is premised were recorded in a series of security videos. Defendant's defense counsel does not contend that Mr. Smiley is not the person depicted in the video. Thus, "the weight of the evidence factor" weighs in favor of detention.

**3. The History and Characteristics of the Defendant:**

Defendant is a 48-year old man who was born in Texas and who has resided in said state his entire life. He has no ties to the Commonwealth of Puerto Rico and is reported to be self-employed as a truck-driver. The Defendant does not have a passport and has not traveled outside the United States.

Defendant's criminal history began on January 9, 1994 when he plead guilty to driving while intoxicated. His latest brush with the law before the instant case was on June 6, 2017 when he plead guilty to criminal mischief. Charges were filed on April 29, 1995 for assault (disposition unknown), and on February 23, 2004 he pleaded *nolo contendere* for assault causing bodily injury to a family member (his father). Defendant's criminal history also includes two convictions involving controlled substances in 1995.

Defendant denies any history of substance abuse, but his mother reports that he becomes violent when he drinks.

During the detention hearing held on November 27, 2019, Defendant's counsel proposed that Mr. Smiley should be released an placed under his mother's custody. In light of Mr. Smiley's criminal history, specifically his *nolo contendere* plea for assault causing bodily harm to a family member, his mother's supervision is an inadequate condition to guarantee his appearance at trial.

### 4. The Danger Posed to the Victim by Defendants Release:

As discussed above, the videos depict the Defendant pursuing the alleged victim through different decks or "floors" of cruise ship. The persistent attack depicted in the videos, and the fact that this is the third time that the defendant faces assault charges, lead the Court to believe that the Defendant would pose a danger to the alleged victim if released.

### D. No set of conditions that will reasonably assure the appearance of the person as required or the safety of the community

Defendant offered the following conditions for his release pending trial: (1) Defendant would be placed under his mother's supervision; (2) Defendant would wear an electronic monitoring bracelet; (3) a restraining order would be issued against Defendant to protect the alleged victim; (4) Defendant would receive treatment for alcohol abuse.

In the alternative, Defendant also proposed that he be allowed to stay in Hogar Guarabí, an in-patient drug treatment facility. This does not suffice. Although there is bed space at Guarabí, Defendant could simply walk away from the facility. *See* U.S. v. Valentin-Cintron, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) (finding that the in patient drug treatment facility lacked custody and the defendant could "simply walk away from the facility."). It lacks the capacity to adequately provide custody for the defendant. Therefore, this alternative would not adequately guarantee Mr. Smiley's appearance in subsequent proceedings. Thus, no set of conditions that will reasonably assure the appearance of the person as required or the safety of the alleged victim or the community.

## IV. CONCLUSION

Pursuant to the above, Defendant Jeff Smiley III **SHALL REMAIN DETAINED PENDING TRIAL**.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 4th day of December 2019.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge